UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| HEATHER MCCOMBS, D.P.M., L.L.C., INDIVIDUALLY AND ON BEHALF OF SIMILARLY SITUATED PERSONS, | ) ) ) ) | |
| PLAINTIFF, | ) ) ) | No. 15 C 10843 |
| v. | ) ) | Judge Thomas M. Durkin |
| CAYAN LLC, D/B/A CAPITAL BANKCARD, AND WELLS FARGO BANK, N.A., | ) ) ) ) | |
| DEFENDANTS. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Heather McCombs, D.P.M., LLC brings this putative class action against Defendants Cayan LLC, doing business as Capital Bankcard ("Capital Bankcard"), and Wells Fargo Bank, N.A. ("Wells Fargo"), alleging that in late November 2015, she and others similarly situated received an unsolicited fax advertisement by or on behalf of Defendants in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*. *See* R. 8 (motion for class certification); R. 22 (amended complaint). The defendants move to dismiss the suit for lack standing and mootness under Rule 12(b)(1), and for failure to state a claim under Rule 12(b)(6). *See* R. 27 (12(b)(1) motion); R. 29 (12(b)(6) motion); R. 88 (supplemental 12(b)(1) motion). They also move to strike Plaintiff's class claims under rule 12(f). *See* R. 29 (12(f) motion). For the following reasons, Defendants' motions are denied.

1

**Factual Background**

Capital Bankcard enables merchants to process electronic payments by, among other things, providing them with credit card payment processing terminals. *See* R. 22-1 (Fax) at 2 ("your current terminal will be upgraded to a new free EMV chip capable and PCI compliant terminal") (emphasis omitted). It does so as a registered independent sales organization (ISO) and member services provider (MSP) of Wells Fargo.[1] *See id* at 3; R. 30 at 3-4 n. 2. "It is well known and established in the merchant processing industry that ISOs and MSPs are not banks and that the actual handling of merchant money is done by an acquiring or processing bank that has contracted with the ISO/MSP." R. 30 at 4. In other words, Capital Bankcard does not process transactions for the merchants to which it provides payment processing equipment; Wells Fargo, as the sponsoring bank that has contracted with Capital Bankcard to service merchant accounts, does so. *Id.*; R. 22 (Complaint) ¶ 8.

Plaintiff, a small medical business, alleges that the defendants are responsible for its receipt on November 25, 2015 of an unsolicited, four-page fax advertisement about their jointly offered merchant payment processing services.

---

[1] The Office of the Comptroller of the Currency at the United States Treasury Department explains that an "ISO/MSP solicits merchants and performs such services for acquirers as processing merchant applications and charge-backs, detecting fraud, servicing merchant customers, providing accounting services, selling or leasing electronic terminals to merchants, processing transactions, authorizing purchases, and capturing data." Office of the Comptroller of the Currency, Comptroller's Handbook: Merchant Processing (O-MP) (August 2014) at 3, *available at* https://www.occ.treas.gov/publications/publications-by-type/comp trollers-handbook/pub-ch-merchant-processing.pdf.

R. 22 ¶ 4. Specifically, Plaintiff alleges that Capital Bankcard sent the fax or caused it to be faxed, *id.* ¶ 5, and that it did so on behalf of Wells Fargo, its sponsoring bank, *id.* ¶ 8. The cover page of the fax indicates that was sent by "Chelsea Miller," "an account manager" for "Merchant Services." R. 22-1 at 2. The sender identifies itself as "a Wells Fargo bank member." The fax begins, "We called your office earlier regarding <u>LOWERING your merchant rate considerably</u> . . ." *Id.* (emphasis in original). Plaintiff alleges, however, that it had "no prior relationship with Defendants." *Id.* ¶ 9. The cover sheet directs Plaintiff to complete the enclosed forms. R. 22-1 at 2.

One of the forms is titled, "Merchant Processing Application and Agreement." *Id.* at 5. The first page of the Merchant Processing Application and Agreement requests a variety of business and financial information from Plaintiff, and bears the following marking in its footer: "Capital Bankcard is a registered ISO/MSP of Wells Fargo Bank, N.A., Walnut Creek, CA." *Id.* The second page contains the "terms" of the proposed contract, including applicable fee schedules, conditions of use, and a requirement that Plaintiff consent to receive unsolicited calls and electronic mail on a going-forward basis. *Id.* at 4. It also contains a Personal Guarantee, which Plaintiff is to sign for the benefit of both of the defendants. *Id.* It reads:

> In exchange for Capital Bankcard and Wells Fargo Bank, N.A. (the Guaranteed Parties) acceptance of, as applicable, the Agreement, the undersigned unconditionally and irrevocably guarantees the full payment and performance of Client's obligations under the foregoing agreements.

3

*Id.* The Application and Agreement concludes with three signature lines, one for Plaintiff, and one for each of the defendants. *Id.* In addition to the Application and Agreement, the fax also enclosed a "Free Equipment Use Agreement," which is printed on Capital Bankcard's letterhead, bearing its logo in the top right-hand corner and its address and contact information at the bottom of the page. *Id.* at 3.

In relation to the receipt of the allegedly unwanted fax, Plaintiff claims that its (and the proposed class members') "right to privacy was invaded, costs of toner and ink were incurred, or time to review and delete the subject form faxes were expended." R. 22 ¶ 13. The complaint does not propose a class definition. It does seek certification of the suit as a class action, actual and statutory damages, injunctive relief, a determination that Plaintiff is an adequate class representative and thus entitled to a "fair, reasonable and adequate incentive award," and "[c]osts of suit, including an award of attorney's fees if permissible." *Id.* at 2-3.

**Procedural Background**

On December 11, 2015, less than ten days after this lawsuit was filed, the defendants served upon Plaintiff a Rule 68 Offer of Judgment along with a freestanding settlement offer. R. 28-1 at 5-8. The offers read, in relevant part:

> [This] offer is for the sum of $7,500.00. This offer encompasses payment of (i) $1,501.00 for the one allegedly unsolicited fax . . . plus a nominal payment for the ink and toner expended for the receipt of the fax; (ii) costs incurred in the Action; and (iii) reasonable attorneys' fees. . . . Cayan and Wells Fargo would agree . . . not to send any further unsolicited faxes.

*Id.* The freestanding offer further provided that a settlement and release would be subject to a confidentiality provision, and would be made without admission of

4

liability or wrongdoing by the defendants. *Id.* Plaintiff rejected both offers, *see id.* at 9, and filed a motion for class certification later the same day, R. 8.

On January 20, 2016, the Supreme Court issued its ruling in *Campbell-Ewald Company v. Gomez*, 136 S. Ct. 663 (2016). Based on their reading of the *Campbell-Ewald* decision, the defendants sent Plaintiff an amended Rule 68 Offer of Judgment and a renewed freestanding settlement offer, this time including a $7,500 bank check. R. 28-1 at 27-32. Plaintiff again rejected the offers and voided the tendered check. *Id.* at 33-36.

The defendants then filed three motions: (1) a motion under Rule 67 to deposit the proposed-settlement funds with the Court, R. 31, (2) a motion under Rule 12(b)(1) to dismiss the case as moot, R. 27, and (3) a motion under Rules 12(b)(6) and 12(f) to dismiss the class complaint, R. 29. Though the Court denied the defendants' motion to deposit funds with the Clerk of Court, it permitted them to deposit a $7,500 check with a trusted intermediary. R. 39.

Shortly thereafter, the Supreme Court decided *Spokeo, Inc. v. Robins*, 136. S. Ct. 1540 (2016), another case Defendants interpret to require dismissal of this case. The defendants supplemented their Rule 12(b)(1) motion accordingly, R. 88, adding lack of subject matter jurisdiction as an additional basis for dismissal.

During the pendency of the defendants' motions, the parties have continuously supplemented the record in this case with appellate and district court opinions that have applied *Campbell-Ewald* and *Spokeo*. The Court grants any

5

outstanding motions to supplement. Having now reviewed the collection of submissions made by both sides, the Court is prepared to issue its ruling.

## Discussion

I.  This Court has subject matter jurisdiction.

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies.'" *Raines v. Byrd,* 521 U.S. 811, 818 (1997) (citing, among other authority, U.S. Const. art. III, § 2). "This case-or-controversy requirement subsists through all stages of federal judicial proceedings" and is met only if a plaintiff can show "an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision." *Spencer v. Kemna,* 523 U.S. 1, 7 (1998) (citations omittied). The defendants argue that subject matter jurisdiction is lacking here because (1) Plaintiff has not suffered an actual injury and therefore lacks constitutional standing; or alternatively (2) Defendants' deposit of $7,500 with an intermediary satisfies Plaintiff's injury thus rendering the case moot. The Court addresses each argument in turn.

A.  *Spokeo* and Standing

The defendants argue that Plaintiff has not suffered a concrete injury and therefore has no standing. R. 88 at 2 n. 2. They premise this argument on the Supreme Court's decision in *Spokeo*, which held that to establish Article III standing, a plaintiff must show not only that she was personally affected by the alleged wrongdoing, i.e., a "particularized" injury, but also that she suffered a "concrete" injury—i.e., a "*de facto*" or "real" injury that "actually exist[s]." 136 S. Ct.

6

at 1548. The *Spokeo* Court explained that "'[c]oncrete' is not . . . necessarily synonymous with 'tangible,'" observing that while "tangible injuries are perhaps easier to recognize, we have confirmed in many of our previous cases that intangible injuries can nevertheless be concrete." *Id.* at 1549. To identify whether an intangible injury is concrete, "both history and the judgment of Congress play important roles." *Id.* at 1549. The *Spokeo* Court explained:

> [I]t is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. In addition, because Congress is well positioned to identify intangible harms that meet minimum Article III requirements, its judgment is also instructive and important.

*Id.* (citations omitted). In other words, the *Spokeo* Court instructed that while a bare procedural statutory violation is insufficient to confer standing, a statutory violation that invokes the type of intangible injury recognized at common law or elevated by Congress to *de facto* status is sufficient in itself to satisfy Article III. *Id.* at 1549-50.

Although the Seventh Circuit has not yet addressed this issue, all of the district courts within this circuit that have considered it have held that a violation of the TCPA gives rise to a concrete injury under Article III.[2] *See Cholly v. Uptain Grp., Inc.*, 2017 WL 449176, at *2 (N.D. Ill. Feb. 1, 2017), citing *Wilkes v.*

---

[2] "In determining whether there is standing, the court assumes *arguendo* that [the plaintiff] has pleaded and could prove a violation of substantive law, and asks only whether it has alleged a concrete injury and a sufficient causal relationship between the injury and the violation." *Spector v. Mondelez Int'l, Inc.*, 2016 WL 1270493, at *9 (N.D. Ill. Mar. 31, 2016), citing *FMC Corp. v. Boesky*, 852 F.2d 981, 995 (7th Cir. 1988) (Ripple, J., concurring).

7

*CareSource Mgmt. Grp. Co.*, 2016 WL 7179298, *3 (N.D. Ill. Dec. 9, 2016) (listing cases). This court adopts the reasoning in those cases, and in particular, Judge Kennelly's analysis in *Aranda v. Caribbean Cruise Line, Inc.*, 2016 WL 4439935 (N.D. Ill. Aug. 23, 2016):

> [The TCPA] establishes substantive, not procedural, rights to be free from telemarketing calls consumers have not consented to receive. Both history and the judgment of Congress suggest that violation of this substantive right is sufficient to constitute a concrete, *de facto* injury. As other courts have observed, American and English courts have long heard cases in which plaintiffs alleged that defendants affirmatively directed their conduct at plaintiffs to invade their privacy and disturb their solitude.

*Id.* at *5-6. Based on this reasoning, the Court concludes that in pleading the receipt of an unsolicited fax advertisement in violation of the TCPA, Plaintiff has alleged a particularized and concrete injury sufficient to satisfy Article III and confer subject matter jurisdiction, at least as a threshold matter, on this Court.

B.   *Campbell-Ewald* and Mootness

The defendants argue that even if Plaintiff has constitutional standing, subject-matter jurisdiction is nevertheless lacking because the case is now moot. For this argument, they rely on dicta from the majority opinion in *Campbell-Ewald*, in which Justice Ginsburg hypothesized that even though an unaccepted settlement offer or offer of judgment does not moot a would-be class representative's claims, perhaps "the result would be different if a defendant deposit[ed] the full amount of the plaintiff's individual claim in an account payable to the plaintiff, and the court then enter[ed] judgment for the plaintiff in that amount." 136 S.Ct. at 672. Since *Campbell-Ewald*, a number of defendants have tested this hypothetical to mixed

8

results in the federal district courts. The Seventh Circuit has not yet addressed whether a tender alone can moot individual or class claims, though it may soon have occasion to do so. *See Fulton Dental v. Bisco,* 2016 WL 4593825, at *8-13 (N.D. Ill. Sept. 2, 2016), *appeal docketed*, No. 16-3574 (7th Cir. Sept. 29, 2016) (district court granted the defendant's motion to tender complete relief and moot the case, including class claims, where no motion to certify had been filed).

A recent opinion of another court in this district conducted a comprehensive review of pre-*Campbell-Ewald* Seventh Circuit precedent to decide whether complete relief tendered to a class representative is likely to moot individual or class claims post-*Campbell-Ewald*. *See Wendell H. Stone Co. v. Metal Partners Rebar, LLC*, 2016 WL 7049084 (N.D. Ill. Dec. 5, 2016). The court determined that where, as here, a plaintiff "has made clear its intent to pursue class certification" by filing a class complaint and placeholder motion for class certification, tender alone, without entry of judgment by the court in favor of the defendant, is insufficient to moot individual or class claims. *Id.* at *3-5 (applying the Seventh Circuit's decision in *Chapman v. First Index, Inc.*, 796 F.3d 783 (7th Cir. 2015), to find that tenders may not be used to "undermine the purposes of the class action device"). The Court agrees with this analysis, and accordingly finds that because Plaintiff has indicated its intent to pursue class certification, and because the Court has not entered judgment for the defendants or ordered the deposited funds released to Plaintiff, the check tendered by the defendants does not moot Plaintiff's individual claims or the claims of the class she seeks to represent.

II. <u>Plaintiff has alleged sufficient facts to state a plausible claim for relief</u>.

A Rule 12(b)(6) motion challenges the sufficiency of the complaint. *See, e.g., Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). A complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), sufficient to provide defendant with "fair notice" of the claim and the basis for it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). In applying this standard, the Court accepts all well-pleaded facts as true and draws all reasonable inferences in favor of the non-moving party. *Mann*, 707 F.3d at 877.

The TCPA prohibits the use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement. 47 U.S.C. § 227(b)(1)(C). The sole issue on this motion to dismiss is whether Plaintiff has adequately alleged that the

fax was sent by or on behalf of each of the defendants.³ In addition to the person who physically sends the fax, federal regulations bring within the definition of "sender" "the person or entity on whose behalf a facsimile unsolicited advertisement is sent or whose goods or services are advertised or promoted in the unsolicited advertisement." 47 C.F.R. § 64.1200(f)(10). Finding that strict liability for a person or entity whose goods or services are advertised in a fax "would lead to absurd results," the Seventh Circuit recently held that "[i]n applying the regulatory definition of a fax sender . . . agency rules are properly applied to determine whether an action is done 'on behalf of' a principal." *Bridgeview Health Care Ctr., Ltd. v. Clark*, 816 F.3d 935, 938 (7th Cir. 2016).

The defendants argue that the cover sheet to the fax is conclusive proof that the fax came not from Capital Bankcard as alleged in the complaint, but from a woman named "Chelsea Miller" at a third party entity called "Merchant Services." R. 30 at 10; R. 65 at 3. The cover sheet indeed contains a header that says "Merchant Services," but nothing on the cover sheet indicates whether Merchant

---

³ In their reply brief, the defendants argue for the first time that because the fax cover sheet says, "We called your office earlier," Plaintiff's allegation that the fax was unsolicited fails as a matter of law. R. 65 at 9. Because the argument was raised only in reply, it is waived. *See Hernandez v. Cook Cnty. Sheriff's Office*, 2015 WL 5307627, at *3 (N.D. Ill. Sept. 10, 2015), citing *Billhartz v. C.I.R.*, 794 F.3d 794, 801 n.4 (7th Cir. 2015) ("it is well-settled that arguments first made in the reply brief are waived"). Waiver aside, whether the parties had a prior business relationship cannot be resolved based on the fax. The language on the cover page—an out of court statement—is not proof that a call was actually placed to Plaintiff or that if it was, it was answered and authorization to send the fax was given. The complaint alleges that "Plaintiff had no prior relationship with Defendants and had not authorized the sending of the fax." R. 22 ¶ 9. At this stage, that is sufficient to allege that the fax was unsolicited, particularly because nothing on the face of the fax proves otherwise.

11

Services is the name of a stand-alone company, a division within Capital Bankcard, or an entity somehow affiliated with or directly controlled by Capital Bankcard. For example, there is no logo for Merchant Services, no mailing address or website, and the fax and phone numbers listed do not, on their face, relate to any entity in particular. Moreover, nothing in the fax negates the possibility that Chelsea Miller is an employee or agent of Capital Bankcard. The phone number that appears on the cover page, 888-446-6532, appears again on the following page, which bears Capital Bankcard's letterhead and contains an email address with a domain name that automatically forwards to Cayan's homepage.[4] The representation on the fax cover page that the sender is "a Wells Fargo Member" is consistent with the representations throughout the fax that Capital Bankcard is a registered ISO/MSP of Wells Fargo. The cover page therefore does not, as Defendants argue, "contradict the allegation that Capital Bankcard sent [the fax]." R. 30 at 10.[5] To the contrary, the characteristics of the fax taken together with Plaintiff's allegations support the reasonable inference that Capital Bankcard did, in fact, send the fax or cause it to be sent. *See Helping Hand Caregivers, Ltd. v. Darden Rest., Inc.* (*Helping Hands I*), 2015 WL 2330197, at *3 (N.D. Ill. May 14, 2015) (finding that "the face of the fax

---

[4] The Court may take judicial notice of matters of public record to note that the domain name listed on the fax forwards to Defendant Cayan's homepage. *See Laborers' Pension Fund v. Blackmore Sewer Constr., Inc.*, 298 F.3d 600, 607 (7th Cir. 2002) (taking judicial notice of a matter of public record resolved by "a quick search of the internet").

[5] If the Court were to place dispositive weight on the details in the fax cover sheet than the advertising materials that follow it, it would encourage those faxing unsolicited advertisements to use non-descript cover pages to avoid having to answer for their illegal conduct.

supports the inference that it was sent by or behalf of [the defendant]" if it bears the defendant's logo, advertises the defendant's goods and services, and extends an commercial offer from the defendant).[6]

That leaves Wells Fargo. Plaintiff does not allege that Wells Fargo actually sent the fax. Rather, Plaintiff's characterization of Wells Fargo as a "sender" hinges on the federal regulation permitting direct liability for an entity "on whose behalf" an unsolicited fax advertisement is sent. *See* R. 38 at 11 (citing 47 C.F.R. § 64.1200(f)(10)). To succeed in stating a claim on this theory, Plaintiff must do more than show that the fax advertises Wells Fargo's services; Plaintiff must also allege facts supporting agency liability. *See Bridgeview*, 816 F.3d at 938. "Agency is typically a factual issue, with the plaintiff at the pleading stage required only to allege a factual basis that gives rise to an inference of an agency relationship." *Mauer* 2016 WL 4651395, at *2 (citing authority).

---

[6] The defendants contend that if the Court considers Capital Bankcard (or Wells Fargo) the "sender" merely because its services are advertised in the fax, it could give rise to "sabotage liability." R. 65 at 5. To be sure, "Merchant Services" may be a rogue entity that fabricated the Merchant Processing Application and Agreement and sent the junk fax to Plaintiff on Capital Bankcard letterhead as some type of scam. That is an issue for discovery and summary judgment. *See Mauer v. Am. Intercont'l Univ., Inc.*, 2016 WL 4651395, at *3 (N.D. Ill. Sept. 7, 2016) ("claims of fabrication are beyond the scope of the amended complaint and an issue for discovery and summary judgment"); *Helping Hands I*, 2015 WL 2330197, at *4 ("the possibility of a frame up is not a reason to dismiss the case on the pleadings"). Here, it suffices that the fax appears to have been sent by or at the direction of Capital Bankcard. If discovery reveals that not to be the case, summary judgment for the defendants may be appropriate. *See Helping Hand Caregivers, Ltd. v. Darden Rest., Inc.* (*Helping Hand II*), 2016 WL 7384458, at *4-5 (N.D. Ill. Dec. 21, 2016) (granting summary judgment).

Wells Fargo argues that neither the "paltry" allegations in the complaint, nor the content of the fax itself support an agency theory of liability. R. 65 at 5-7. The allegations in the complaint are indeed sparse; the words "agency" and "agent" appear nowhere. Construed broadly, the complaint alleges only that Capital Bankcard cannot service its merchant customers without the active involvement of Wells Fargo as its sponsoring bank. R. 22 ¶ 8 ("[Wells Fargo] is the only entity approved to extend acceptance of payment cards directly to a Merchant, is responsible for educating Merchants on pertinent Visa and MasterCard Rules with which Merchants must comply [ ], is responsible for and must provide settlement funds to the Merchant, and is responsible for all funds held in reserve that are derived from settlement."). Looking to the fax itself, Wells Fargo is mentioned first in the cover sheet, where the sender identifies itself as "a Wells Fargo member." The enclosed Merchant Processing Application and Agreement—the substance of the fax—bears the marking "Capital Bankcard is a registered ISO/MSP of Wells Fargo Bank, N.A." at the bottom of both pages. It furthermore defines Capital Bankcard and Wells Fargo collectively as "the guaranteed parties" and makes Wells Fargo's acceptance of the application a condition of the agreement.[7]

---

[7] Defendant argues that the complaint impermissibly "groups" the defendants together in violation of Federal Rule of Civil Procedure 8(c). R. 30 at 9. Specifically, the defendants take issue with the allegation that "the fax is an advertisement for Plaintiff to enter into a contract with Defendants for their business services." R. 22 ¶ 7 (typographical errors corrected). That is not an inaccurate characterization of the fax, which itself groups the defendants as "guaranteed parties," and invites Plaintiff to apply to enter into a contract for payment processing services with both entities. The allegation, therefore, does not run afoul of Rule 8(c), which is concerned with ensuring that each defendant has fair notice of the precise nature of

14

Wells Fargo argues that these facts are insufficient to state a claim on an agency theory of liability. R. 30 at 10; R. 65 7. In support of this proposition, it cites *Urban Elevator Service, LLC v. Stryker Lubricant Distributers, Inc.*, 2015 WL 6736676 (N.D. Ill. Nov. 4, 2015). In *Urban Elevator*, the plaintiff named as a defendant an entity whose name appeared nowhere on the face of the fax and whose goods and services were not advertised in the fax. *Id.* at *1. The only fact alleged in the complaint tying the defendant to the fax was that the defendant had the word "Sinopec" in its name, as did the company whose goods the fax advertised. *Id.* The complaint said nothing about the relationship between the Sinopec entities other than that the defendant was "a liaison which organizes meetings." *Id.* The court found that on those limited facts, the defendant's connection to the transmission of the fax was too speculative to sustain a TCPA claim on an agency theory of liability.

The facts pled in *Urban Elevator* are easily distinguished from the facts supporting Plaintiff's claim. Here, Wells Fargo's name does appear on the fax, the fax does advertise services performed by Wells Fargo, and the fax contains a contract for services to which Wells Fargo is a necessary party. Moreover, the fax plainly indicates a contractual relationship between Wells Fargo and Capital Bankcard pursuant to which Capital Bankcard may solicit and service merchant business processed by Wells Fargo as the sponsoring bank. Still, Wells Fargo urges

---

the violation claimed against it. Plaintiff has alleged direct sender liability against each of the defendants—against Capital Bankcard as the transmitter of the fax and against Wells Fargo as the entity on whose behalf the fax was sent. The defendants' concern that they are "lumped together" is without merit.

that "[i]f mere references to a sponsor bank on the merchant application attached to a fax were sufficient to allege a TCPA claim against the bank, that would mean that every time a third party faxed a merchant application, the sponsoring bank would potentially be on the hook for TCPA liability merely for being identified as the processing bank associated with the underlying transaction. That would be absurd." R. 30 at 8.

The Court fails to see the absurdity in the proposition that a sponsoring bank may be "on the hook" if a third-party ISO/MSP solicits merchant business on its behalf and fails to follow the law. This is not to say that bank liability is automatic under the circumstances. The "on-whose-behalf" inquiry is complicated one, and is better suited to resolution at the summary judgment stage than at the pleading stage. *See Siding and Insulation Co., v. Alco Vending, Inc.*, 822 F.3d 886, 899 (6th Cir. 2016) (setting forth circumstances to be considered in the "on-whose-behalf" analysis, including the degree of input and control over the content of the fax, the actual content of the fax, scope of control between the parties, approval of the draft of the fax and its transmission, method and structure of payment, overall awareness of the circumstances, and measures taken to ensure compliance and/or cure non-compliance). Because Plaintiff has plausibly alleged that Capital Bankcard was acting on Wells Fargo's behalf, it has met its pleading burden.

In summary, the complaint and incorporated fax, construed broadly and in Plaintiff's favor, plausibly allege that Capital Bankcard sent the fax to Plaintiff, R. 22 ¶ 5, that the merchant payment processing services advertised in the

Application and Agreement are provided jointly by both defendants, *id.* ¶ 8, R. 22-1 at 4, and that Capital Bankcard, as a registered ISO/MSP of Wells Fargo, was acting as an agent for Wells Fargo in soliciting merchant business for their mutual benefit, *id.* This is sufficient to state a TCPA claim against both defendants.

III. <u>Plaintiff's class allegations are sufficient at this stage of the proceedings.</u>

On the civil cover sheet accompanying the complaint, Plaintiff checked the "class action" box. R. 2. The case caption identifies the plaintiffs as "Heather N. McCombs, D.P.M., LLC and similarly situated persons." R. 1, R. 22. The allegations and prayer for relief refer generally to "class members" and "the class," but the complaint does not define the class Plaintiff purports to represent or allege its amenability to class treatment under Rule 23. The defendants move to strike any references to the class arguing that the "inadequate" and "defective" class allegations deprived them of "fair notice of any purported class or any basis for believing this is a case worthy of class treatment." R. 65 at 11.

The decision to strike is within the discretion of the Court. *See Murdock-Alexander v. Tempsnow Employment*, 2016 WL 6833961, at *3 (N.D. Ill. Nov. 21, 2016) (citing authority). The Court declines to strike references to "the class" in the complaint for two reasons. First, well before the defendants moved to dismiss, Plaintiff filed a motion for class certification defining the class as "[a]ll persons who were sent at least one fax in the form represented by Exhibit A attached to Plaintiff's Complaint, that contained language identifying Capital Bankcard and Wells Fargo Bank, N.A., within [the] fax, that was sent on or after December 2,

2011, and on or before December 2, 2015." R. 8 at 2. The motion argues that certification is proper under each of the Rule 23 factors. *Id.* at 2-8. Second, the Seventh Circuit has recognized that "[c]lass certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013). Because the defendants were promptly put on notice of the proposed class, and because seeking certification is the normal practice in TCPA cases, the motion to strike is denied.

**Conclusion**

For the foregoing reasons, the defendants' motions [27] [29] [88] are denied. The parties are to appear for a status conference on April 11, 2017 at 9:00 am to set a discovery schedule. In the meantime, the Court directs the parties to the Case Procedures on its website regarding preemptive class motions, and asks the parties to consider entering into a stipulation that would obviate the need for the Court to address the placeholder motion for class certification, R. 8, while also addressing the concerns raised in *Campbell-Ewald* and *Chapman*.

ENTERED:

*Thomas M Durkin*

Honorable Thomas M. Durkin
United States District Judge

Dated: March 16, 2017

18